IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILLIAM MARK MIZE, | : |
| Petitioner | : |
| VS. | : |
| | : CIVIL ACTION NO.: 3:02-CV-110 (DF) |
| WILLIAM TERRY[1], Warden, | : |
| Respondent | : |

**ORDER**

Pending before the Court is Petitioner's Motion to Hold Proceedings in Abeyance Pending Exhaustion. (Tab 69.) For the reasons discussed below, this motion is denied.

**I. STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**A. Facts**

The Supreme Court of Georgia summarized the facts in this case as follows:

> Viewed in the light most favorable to the verdict, the evidence adduced at trial showed that Mize was the leader of a small group, similar to the Ku Klux Klan, called the National Vastilian Aryan Party (NVAP). Witnesses testified that Mize made all the decisions for the NVAP. Several witnesses also testified that Mize displayed a single-shot 12-gauge shotgun at an NVAP meeting and told the members that the shotgun was the kind of weapon that the group would use because it could not be traced. Several of Mize's friends and co-workers were members of the NVAP, or in the initiation process. Eddie Tucker, the victim, had filled out an application form but was not a full member.
> On Saturday, October 15, 1994, several NVAP members and applicants gathered at Mize's home after Mize got off from work. Those present were Mize, Mark Allen, Chris Hattrup, Brian Dove, Samantha Doster (Mize's girl friend), and Tucker. Mize told Doster that the group was going camping that night and they all got in Mize's car. When they were driving, Mize told the group that there was a crack house in Athens that he wanted "gotten rid of." Mize stated that he wanted Hattrup and Tucker to set the house on fire, and they stopped at a convenience store and bought a can of lighter fluid. Hattrup and Tucker were dropped off near the house but

---

[1] It appears that William Terry became Warden of Georgia Diagnostic and Classification Prison on April 1, 2005.

their attempt to set it on fire was unsuccessful. When they rejoined the group, Hattrup told Mize that he needed to talk with him. Hattrup also said, referring to Tucker, that they "didn't need anybody around that couldn't follow orders."

After spending an hour at a bar, Mize drove the group to a wooded area in Oconee County. Dove and Doster were given camping gear to carry and the group set out into the woods. No one had a flashlight even though it was night. Tucker was in the lead, followed by Mize, Allen, Doster, Dove and Hattrup. After they had gone only a short distance, Hattrup passed Dove and Doster and moved up the trail to talk with Allen and Mize. Mize told Allen to stop Dove and Doster from continuing into the woods. At this point, Tucker, Hattrup and Mize were out of sight in the woods ahead of Allen, Dove and Doster. There was a shot, and Tucker exclaimed, "My God, what did you do that for?" There was a second shot. Doster heard Hattrup ask Mize if he had the gun and Mize replied, "No, man. I thought you had it." Hattrup stated, "No. He took it away from me," and Mize said, "If you can't finish it I can." Allen left Dove and Doster and moved up the trail. Dove and Doster heard a discussion among Mize, Allen, and Hattrup about muscle spasms and how Tucker was still moving. There was a third shot.

Dove and Doster ran back to Mize's car. Mize emerged from the woods holding a shotgun and trying to break it down. Once in the car, Mize asked everyone if they knew why it was done. Everyone nodded in agreement. Mize told the group that the same thing could happen to them if they ran their mouth. Mize also told the group that, if asked about Tucker, they should say that they had dropped him off at a convenience store. While they were driving, Allen and Hattrup noticed that the barrel of the shotgun had shattered so they stopped at a bridge and threw the gun in a river. Later, Mize confided to Doster that he had finished Tucker off by shooting him in the head.

The police discovered Tucker's body several days later. He had been shot in the back, chest and head with a shotgun. The medical examiner testified that the back and chest wounds were inflicted by a shotgun fired at close range. The victim's head exhibited widely scattered pellet wounds that failed to penetrate the skull; the head wounds were consistent with a close-range shotgun blast that had shattered the barrel. The medical examiner further testified that the shots to the back and chest tore through the victim's right lung, but that none of the wounds were immediately fatal. The victim's death was due to blood loss, and it could have taken him several minutes to die. A fragment of the shotgun barrel was discovered about two feet from the body's location; the gun was not recovered.

After the body was discovered but before anyone was arrested, Chris Hattrup showed his roommate, Paul McDonald, the newspaper article about Tucker's death and told him what had happened. When the crack house failed to burn, Mize asked how Tucker had done and Hattrup responded that Tucker "didn't do what he was supposed to do." Mize then said, "you know what we have to do." Hattrup admitted to McDonald that he shot Tucker in the back and chest, but that Tucker was still alive. He was out of ammunition, though, so he asked Mize for another shotgun shell and Mize gave it to him. Hattrup then shot Tucker in the head. Hattrup also boasted to McDonald that he was now a "hit man for the Klan."

Brian Dove told the police what he had seen and heard that night, and he later testified at Mize's trial. The other four NVAP members involved in Tucker's death were arrested. After spending a year in jail, Doster agreed to testify against the others and her charges were dropped.

*Mize v. State*, 269 Ga. 646, 646-48 (1998).

## B. Procedural History

Petitioner was indicted by the Oconee County Grand Jury on January 11, 1995 for the malice murder of William Eddie Tucker. (Resp't Ex. 23, p. 1-2.) The State filed a notice of intent to seek the death penalty on March 29, 1995. (Resp't Ex. 23, p. 13-14.) Following a jury trial held on December 4-13, 1995, the jury convicted Petitioner and sentenced him to death. (Resp't Ex. 23, p. 391, 406; Resp't Ex. 14, p. 2398.)

Petitioner filed a motion for new trial on January 14, 1996, and an amended motion for a new trial on May 20, 1996. (Resp't Ex. 23, p. 420-21, 442-85.) The Superior Court of Oconee County denied the motion for new trial, as amended, on August 22, 1996. (Resp't Ex. 23, p. 486-94.) Petitioner filed a notice of appeal. (Resp't Ex. 23, p. 495.)

The Supreme Court of Georgia struck Petitioner's initial appeal and remanded the case back to the superior court for appointment of appellate counsel. (Resp't Ex. 23, p. 518, 524-27.) The court appointed Palmer Singleton and Mr. Singleton filed a motion for a new trial on March 3, 1997. (Resp't Ex. 23, p. 524-27.) An amended motion for a new trial was filed on June 30, 1997, and supplemented on August 4, 1997. (Resp't Ex. 23, p. 539–616; 625-48.) On October 2, 1997, the Superior Court of Oconee County entered an order denying Petitioner's motion for a new trial. (Resp't Ex. 23, p. 663-76.) Petitioner filed a notice of appeal on October 31, 1997. (Resp't Ex. 23, p. 678-81.)

The Supreme Court of Georgia affirmed Petitioner's conviction and sentence on June 15, 1998. *Mize v. State*, 269 Ga. 646 (1998). Petitioner's motion for reconsideration was denied on July 30, 1998. (Resp't Ex. 30.)

Petitioner filed a *pro se* petition for writ of certiorari in the United States Supreme Court on November 3, 1998. (Resp't Ex. 31.) The Supreme Court of the United States denied the petition on January 11, 1999. (Resp't Ex. 33.)

Petitioner, with the assistance of attorney John Matteson, filed his first state habeas corpus petition (Civil Action No. 99-V-155) in the Butts County Superior Court on March 3, 1999. (Resp't Ex. 37, p. 116.) It appears that Petitioner then decided to discharge Mr. Matteson and, acting *pro se*, Petitioner filed a second habeas petition (Civil Action No. 99-V-205) on March 19, 1999, along with letters to the court stating that no further filings from Mr. Matteson were to be accepted. (Resp't Ex. 37, p. 116-134.) Petitioner requested that Mr. Mattson cease all representation and withdraw the habeas corpus petition that he filed on March 3, 1999. (Resp't Ex. 37, p. 131-37.) On April 8, 1999, Mr. Matteson complied with Petitioner's request and filed a notice of dismissal requesting that the court dismiss Civil Action No. 99-V-155 without prejudice. (Resp't Ex. 37, p. 137.)

Petitioner then informed the court that he wished to be represented by Bruce Harvey and Mr. Harvey filed a motion seeking to reinstate and consolidate Petitioner's prior habeas corpus petitions. (Resp't Ex. 37, p. 1140-145.) Subsequently, Petitioner notified the court that Mr. Harvey no longer represented him, he wished to proceed *pro se*, and he wished to withdraw his habeas petition. (Resp't Ex. 37, p. 168-69, 172, 200.) On October 27, 1999 the court allowed Petitioner to voluntarily dismiss his habeas corpus petition. (Resp't Ex. 37, p. 267-68.)

Petitioner filed a third habeas corpus petition on December 28, 1999. (Resp't Ex. 37, p. 39.) Again, Petitioner continually asserted his *pro se* status; although Thomas Dunn from the Georgia Resource Center attended all of the hearings and assisted Petitioner. (Resp't Ex. 37, p. 39, 46-48, 269, 279-94, 309-315, 317-19, 418-20; Resp't Ex. 50, 51.) The Court held several hearings and at the close of the February 1, 2001 evidentiary hearing, the court stated that it would reserve ruling until the Superior Court of Oconee County ruled on an extraordinary motion for new trial that Petitioner filed *pro se* in July 2000. (Resp't Ex. 37, p. 271-78, 320-37.)

In the July 2000 extraordinary motion for new trial, Petitioner attached the June 15, 2000 affidavit of Mary Samantha Doster, as well as other affidavits, and asserted that this newly

discovered evidence warranted a new trial. (Resp't Ex. 37, p. 271-272.) The Oconee County Superior Court ordered that Petitioner be granted a hearing limited solely to the issue of prosecutorial misconduct with respect to the alleged knowing use of perjured testimony by the District Attorney as claimed in the June 15, 2000 affidavit of Mary Samantha Doster. (Resp't Ex. 37, p. 410-17.) However, before the hearing took place, Petitioner, through his then attorney of record, John Matteson, withdrew the extraordinary motion for new trial on July 5, 2001. (Resp't Ex. 38-41.) The Court entered an order dated July 9, 2001 cancelling the July 10, 2001 hearing due to Petitioner's withdrawal of his extraordinary motion for new trial. (Resp't Ex. 41.)

Six months later, the Butts County Superior Court ruled on the pending habeas corpus action and denied relief. (Resp't Ex. 42.)

On January 28, 2002, Petitioner filed an application for a certificate of probable cause to appeal in the Georgia Supreme Court. (Resp't Ex. 43.) The petition was denied on July 15, 2002. (Resp't Ex. 45.) Petitioner's motion for reconsideration from the denial of his application for a certificate of probable cause to appeal filed in the Supreme of Georgia was denied on September 16, 2002. (Resp't Ex. 47.)

Petitioner filed a *pro se* Application for Habeas Corpus under 28 U.S.C. § 2254 in this Court on October 31, 2002. (R. at 2.) The Court appointed counsel and an amended petition was filed on July 21, 2003. (R. at 10, 19.)

## II. ARGUMENT AND CITATION OF AUTHORITY

Petitioner has requested that this Court stay his federal proceedings while he litigates in state court his claim that one of the State's key witnesses, Mary Samantha Doster, testified falsely at trial under the direction and encouragement of the prosecutor. All parties agree that this claim is unexhausted. (R. at 20, p. 9; Pet'r Mot. to Hold Proceedings in Abeyance Pending Exhaustion, p 6.)

In a recent case, the Supreme Court of the United States addressed the issue of whether a district court has the discretion to stay a habeas petition that has both exhausted and unexhausted claims to allow the petitioner to first have a state court address his unexhausted claims. ***Rhines v.***

*Weber*, 161 L. Ed.2d 440 (2005). In ***Rhines***, the Court held as follows:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.* at 451.

Petitioner maintains that he has good cause for failing to litigate his claim of prosecutorial misconduct in the state court–ineffective assistance of counsel. Petitioner states that John Matteson improperly advised him to withdraw the extraordinary motion for new trial prior to the scheduled hearing date. Petitioner states that the decision to withdraw the pending motion was erroneous and fell below the standard of professionalism expected of an attorney. According to Petitioner it was this decision alone, made by his attorney, that resulted in the state court's inability to consider the claim.

If the Court considered only Petitioner's extraordinary motion for a new trial, the correspondence from Mr. Matteson regarding that motion, and Mr. Matteson's ultimate decision to withdraw the motion, the Court would be inclined to agree that Petitioner has shown good cause for his failure to have the state court adjudicate his claim of prosecutorial misconduct. However, a review of Petitioner's entire record reveals that Petitioner had plenty of opportunity to litigate this same issue in at least one of his three state habeas corpus actions. However, Petitioner, of his own accord, failed to do so.

### A. Petitioner's First and Second State Habeas Corpus Actions

Petitioner, with the assistance of attorney John Matteson, filed his first state habeas corpus petition (Civil Action No. 99-V-155) in the Butts County Superior Court on March 3, 1999. (Resp't Ex. 37, p. 83.) In this petition, one of Petitioner's claims was that "[t]he State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court/fact-finder at

both stages of the trial." (Resp't Ex. 37, p. 96.)[2]

It appears that Petitioner then decided to discharge Mr. Matteson and proceed *pro se*. Petitioner filed a *pro se* habeas corpus petition (Civil Action No. 99-V-205) on March 19, 1999. (Resp't Ex. 37, p. 116-34.) Petitioner also informed the court that no further filings from Mr. Matteson were to be accepted. (Resp't Ex. 37, p. 116-134.) Petitioner requested that Mr. Mattson cease all representation and withdraw the habeas corpus petition that he filed on March 3, 1999. (Resp't Ex. 37, p. 131-37.) Mr. Matteson complied with Petitioner's wishes and on April 7, 1999 submitted a request to withdraw the habeas petition designated as Civl Action No. 99-V-155. (Resp't Ex. 37, p. 137.)

By affidavit dated April 8, 1999, Petitioner notified the Butts County Superior Court that he no longer wanted to be represented by Mr. Matteson and he no longer wished to proceed *pro se*; instead he wished to be represented by Bruce Harvey. (Resp't Ex. 37, p. 140-41.) Mr. Harvey filed a motion to reinstate and consolidate Petitioner's prior habeas corpus petitions. (Resp't Ex. 37, p. 1140-145.) In this motion, Mr. Harvey explained that Petitioner wished to reinstate the original habeas corpus petition that was filed by Mr. Matteson (Civil Action No. 99-V-155) and consolidate it with Petitioner's *pro se* habeas corpus petition (Civil Action No. 99-V-205.) (Resp't Ex. 37, p. 143-45.) Mr. Harvey also attended a June 8, 1999 hearing at which he notified the court that he represented Petitioner and requested that the two previous habeas corpus petitions reinstated and consolidated. (Resp't Ex. 37, p. 151-66.)

Not long after the June 8, 1999 hearing, Petitioner mailed the Butts County Superior Court a "Notice of *Pro Se* Status" in which he explained that Mr. Harvey was no longer his attorney. (Resp't Ex. 37, p. 167-69.) In response, the court held another hearing on July 29, 1999 and, at the hearing, Petitioner seemed to indicate he wished Mr. Harvey to remain the attorney on his case.

---

[2] The Court realizes that Petitioner did not have the June 15, 2000 Affidavit of Mary Samantha Doster at this time. Petitioner, acting *pro se*, voluntarily dismissed this habeas corpus petition approximately eight (8) months before Ms. Doster signed this affidavit.

(Resp't Ex. 37, p. 175-99.) However, Petitioner ultimately discharged Mr. Harvey. (Resp't Ex. 37, p. 203, 224.)

On October 20, 1999, Thomas Dunn, Executive Director of the Georgia Resource Center, filed an entry of appearance as co-counsel for Petitioner. (Resp't Ex. 37, p. 228.) This entry of appearance stated that "Mr. Mize would remain in control of his litigation." (Resp't Ex. 37, p. 228.) In a letter dated October 22, 1999, Petitioner, who presumably was "in control of his litigation," informed the habeas court that he wanted to dismiss his habeas corpus petition in its entirety. (Resp't Ex. 37, p. 268.) At Petitioner's request, the Butts County Superior Court dismissed Petitioner's state habeas petition on October 27, 1999. (Resp't Ex. 37, p. 267.)

### B. Petitioner's Third State Habeas Corpus Petition

On December 28, 1999, Petitioner filed another state habeas corpus petition–this was his second *pro se* petition and his third total filed in the Butts County Superior Court. (Resp't Ex. 34.)

Although Petitioner filed this habeas petition *pro se*, it was apparent that he had assistance from the Georgia Resource Center. To clarify the issue of representation, the Butts County Superior Court held a hearing on March 16, 2000. (Resp't Ex. 50.) Mr. Dunn attended the hearing and explained that he wished to assist Petitioner as "standby counsel." (Resp't Ex. 50, p. 7-10.) Petitioner initially stated that he did not want to be represented by the Georgia Resource Center, but he finally agreed that he would represent himself and Mr. Dunn would assist him with his case. (Resp't Ex. 50, p. 7, 14, 26.) In a May 2, 2000 hearing, Petitioner again stated that he needed Mr. Dunn's assistance. In a June 1, 2000 letter, Mr. Dunn assured the Court that he was "investigating Mr. Mize's case" and "gathering evidence." (Resp't Ex. 37, p. 270.)

The Court held a third hearing on September 19, 2000. (Resp't Ex. 52.) At this hearing, Mr. Dunn submitted an "Amendment to Petition for Writ of Habeas Corpus." (Resp't Ex. 52, p. 56.) Claim II of this amendment contained the allegation that "[t]he State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that

the false testimony could have affected the judgment of the trial court/fact-finder at trial." (Resp't Ex. 52, p. 68.) Mr. Dunn also submitted the following documents to the habeas court: (1) Mary Samantha Doster's June 15, 2000 Affidavit; (2) a Notice of Intent to Rely Upon Affidavits; and (3) Petitioner's Witness List that contained the name and address of Mary Samantha Doster, as well as numerous other witnesses. (Resp't Ex. 52.) Mr. Dunn explained that if he represented Petitioner these are the documents that he would present. (Resp't Ex. 52, p. 8, 35-36.)

At this hearing, however, Petitioner stated that he no longer wanted any assistance from Mr. Dunn or the Georgia Resource Center and that he wanted the court to rely solely on his *pro se* filings.[3] (Resp't Ex. 52, p. 19-21, 24-25.) In response to this request, the court relieved the Georgia Resource Center from any further representation or assistance of Petitioner. (Resp't Ex. 52, p. 53.) Additionally, the Court told Petitioner it would allow him to amend his petition to include any claims he so desired. (Resp't Ex. 52, p. 54.)

Following this hearings, in an October 3, 2000 letter, Mr. Dunn notified the superior court as follows: "Mr. Mize has again communicated his desire that this office assist him in habeas corpus proceedings. I met with him this past Monday. He indicated that he welcomed further investigative and legal support from this office as he pursues his *pro se* position." (Resp't Ex. 37, p. 425.) Moreover, in a letter dated October 31, 2000, Mr. Dunn reminded Petitioner that he had "submitted a Notice of Intent to Rely on Affidavits and an exhaustive list of potential witnesses" for the upcoming evidentiary hearing. (Resp't Ex. 27, p. 316.) Mr. Dunn also advised Petitioner that at the upcoming evidentiary hearing, Petitioner should use the affidavits that Mr. Dunn had provided him and the court at the previous September 19, 2000 hearing. (Resp't Ex. 37, p. 316.)

The Superior Court of Butts County held an evidentiary hearing on February 1, 2001. The Court explained that Petitioner could testify and could call any witnesses he wanted. (Resp't Ex. 37, p. 6.) Petitioner, who insisted on acting *pro se* even though Thomas Dunn was present at the hearing

---

[3] Petitioner did agree to have the affidavits filed. (Resp't Ex. 52, p. 54-55.)

and continually asserted his desire to help, called no witnesses (other than himself). As Petitioner points out in his current brief to this Court, he was "woefully unprepared." However, it is apparent that this lack of preparation was of his own making.

The Butts County Superior Court informed Petitioner that it would reserve ruling on the habeas corpus petition until the Oconee County Superior Court ruled on the outstanding extraordinary motion for a new trial. Subsequently, the Butts County Superior Court issued its decision denying Petitioners habeas petition on January 14, 2002. (Resp't Ex. 42.) This was approximately six (6) months after Mr. Matteson dismissed the extraordinary motion for a new trial. At no time during this six (6) months did Petitioner seek to include his claim of prosecutorial misconduct in his habeas corpus petition pending in Butts County.[4] This is true, even though Mr. Dunn attempted to include this claim in the amended habeas petition he sought to file (and Petitioner refused to file) on September 19, 2000. Moreover, Petitioner had already allowed Ms. Doster's affidavit to be filed in Butts County following the September 19, 2000 hearing. Yet, the record reveals no attempt to include this claim in his habeas petition following the dismissal of the extraordinary motion for a new trial in July 2001.

The record clearly reveals that Petitioner's claim of prosecutorial misconduct is not new. The evidence on which he bases his claim–Mary Samantha Doster's June 15, 2000 affidavit–has been in Petitioner's possession since at least July 2000. Petitioner had ample opportunity to raise this issue at the state level. However, Petitioner, of his own accord, failed to do so. During his state

---

[4] It appears that by letter dated May 20, 2001 (which was prior to Mr. Matteson's July 5, 2001 dismissal of the extraordinary motion for a new trial), Petitioner requested the Butts County Superior Court reopen the evidence in his state habeas case and allow John Matteson to represent him. (Ex. BB attached to Pet'r Motion to Hold Proceedings in Abeyance Pending Exhaustion.) Apparently Petitioner was not specific in his request to reopen the evidence, but instead simply asked the court to give Mr. Matteson "wide latitude to repair whatever legal issues that may have been messed up." (Ex. BB attached to Pet'r Motion to hold Proceeding in Abeyance Pending Exhaustion.) Respondent objected because Petitioner already had and dismissed numerous attorneys during this third habeas proceedings and because Petitioner had unequivocally discharged Mr. Matteson and removed from the record all pleadings filed by Mr. Matteson in Petitioner's very first habeas petition (Civil Action No. 99-V-155.) It does not appear that the Butts County Superior Court ever addressed Petitioner's May 20, 2001 letter. Moreover, it does not appear that Petitioner ever brought the issue of prosecutorial misconduct up in the Butts County Superior Court after he and Mr. Matteson voluntarily dismissed his extraordinary motion for a new trial.

proceedings, Petitioner was represented by numerous experienced death penalty attorneys. Yet, Petitioner refused to take their advise, discharged all of them, and failed to assert the claims that he should have. Given this, the Court finds that Petitioner has not shown good cause for his failure to assert the prosecutorial misconduct claim at the state level.

In *Rhines*, the Supreme Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" **and** the unexhausted claim is not plainly meritless. *Rhines*, 161 L. Ed.2d at 451. Both factors ((1) good cause for failure to exhaust, and (2) that the claim is not plainly meritless) must be present in order for the court to issue a stay and abeyance. Because Petitioner has failed to show good cause for his failure to raise his claim of prosecutorial misconduct at the state level, the Court need not go further and address the issue of whether the claim is plainly meritless.

### III. CONCLUSION

Based on the above, Petitioner's Motion to Hold Proceedings in Abeyance Pending Exhaustion is **DENIED**.[5]

**SO ORDERED**, this __29__ day of __July__, 2005.

_____
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/lnb

---

[5] Petitioner informs the Court that he "has filed an Application for Petition for Writ of Habeas Corpus with the Superior Court of Butts County, raising the unexhausted claim of prosecutorial misconduct in the presentation of the trial testimony of Samantha Doster." (Pet'r Motion to Hold Proceedings in Abeyance Pending Exhaustion, p. 6.) The parties are to keep this Court informed of relevant developments in this state court proceeding. However, this federal habeas corpus action has been pending since October 31, 2002. Most of the delay has been due to Petitioner's own perpetual filing of frivolous *pro se* motions and his continual complaints about and attempts to discharge his attorneys. The Court notes that these are the same activities that Petitioner undertook, to his own detriment, again and again during his three previous state habeas corpus proceedings. This Court is not willing to delay this case for any additional time and the federal action will go forward while Petitioner attempts to exhaust whatever claim he so chooses in the state courts.