IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

WILLIAM MARK MIZE,          :
                                     :
                Petitioner       :
                                     :
           VS.               :
                                     :     CIVIL ACTION NO.: 3:02-CV-110 (DF)
WILLIAM TERRY, Warden,      :
                                   :
             Respondent    :
                                   :
_____ :

**O R D E R**

Pursuant to the Amended Scheduling Order dated July 29, 2005 (R. at 73), the parties have briefed the issues of procedural default, cause and prejudice, and fundamental miscarriage of justice.

Respondent alleges that four of Petitioner's claims contained in his Amended Petition for Writ of Habeas Corpus by a Person in State Custody (hereinafter "federal habeas petition") are procedurally defaulted. The Court now addresses whether these four claims have been procedurally defaulted and, if so, whether the procedural default may be excused due to cause and prejudice or a fundamental miscarriage of justice.

## I. THE PROCEDURAL DEFAULT RULE

The procedural default rule provides that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994). Therefore, procedural default applies in two contexts. First, if a petitioner does not exhaust his state remedies because he fails to fairly present an issue to the state courts, the federal district court must treat the issue as procedurally defaulted. *See Baldwin v. Reese*, 541 U.S. 27 (2004); *Snowden v. Singletary*, 135 F.3d 732, 736

(11th Cir. 1998); **Putman v. Turpin**, 53 F. Supp. 2d 1285, 1292 (M.D. Ga. 1999), **aff'd**, 268 F.3d 223 (11th Cir. 2001) (explaining that "when it is clear that the unexhausted claims would be barred in state court due to a state law procedural default, federal courts 'can . . . treat those claims now barred by state law as no basis for federal habeas relief'") (quoting **Snowden**, 135 F.2d at 735). Second, the procedural default rule also provides that "[f]ederal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim clearly and expressly states that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." **Hill v. Jones**, 81 F.3d 1015, 1022 (11th Cir. 1996) (citing **Harris v. Reed**, 489 U.S. 255 (1989)).

## II. EXCEPTIONS TO THE PROCEDURAL DEFAULT RULE

There are two exceptions to the procedural default rule: (1) cause and prejudice, and (2) fundamental miscarriage of justice. The Eleventh Circuit recently explained as follows:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. . . . Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

**Jones v. Campbell**, No. 04-11911, 2006 U.S. App. LEXIS 1381, at *49-50 (11th Cir. Jan. 20, 2006).

### A. Cause and Prejudice

A finding of cause "must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with the procedural rule." **Putman**, 53 F. Supp. 2d at 1292 (citing **Murray v. Carrier**, 477 U.S. 478 (1986)). The petitioner must show that there was "some external impediment preventing counsel from constructing or raising the claim." **Id**.

If a petitioner relies on cause to excuse a procedural default, he must also show actual prejudice. Because a petitioner must show both, "a finding by the court that one prong has not been met alleviates the need to analyze the claim under the other prong." **Id**. In relation to prejudice, courts have explained that a petitioner "must shoulder the burden of showing, not merely that the

errors at his trial created a ***possibility*** of prejudice, but that they worked to his ***actual*** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." ***United States v. Frady***, 456 U.S. 152, 171 (1981).

### B.  Fundamental Miscarriage of Justice

If a petitioner cannot show both cause and prejudice, a federal court "may consider procedurally defaulted claims only if a failure to do so would result in a fundamental miscarriage of justice." ***Putman***, 53 F. Supp.2d at 1292.  Regarding what is necessary in order for a petitioner to succeed on a claim of fundamental miscarriage of justice, the Eleventh Circuit has stated as follows:

> To excuse a default of a guilt-phase claim under [the fundamental
> miscarriage of justice] standard, a petitioner must prove "a constitutional
> violation [that] has probably resulted in the conviction of one who
> is actually innocent." . . . To gain review of a sentencing-phase
> claim based on manifest injustice, a petitioner must show that "but for
> constitutional error at his sentencing hearing, no reasonable juror
> could have found him eligible for the death penalty under [state] law."

***Hill***, 81 F.3d at 1023 (***citations omitted***).

## III.  PROCEDURAL DEFAULT ISSUES RELATING TO PETITIONER'S SPECIFIC CLAIMS FOR RELIEF

**A.  Claim Two: Petitioner's right to due process, protected by the Fifth and Fourteenth Amendments to the United States Constitution, was violated when the State's key witness lied at trial about facts critical to the jury's determination of guilt.**

In Claim Two of his federal habeas petition, Petitioner alleges that one of the State's key witnesses, Mary Samantha Doster, testified falsely at trial under the direction and encouragement of the prosecution.  Petitioner bases this claim on Ms. Doster's affidavit dated June 15, 2000. Respondent maintains that this claim is procedurally defaulted and cannot be litigated in this court.

Both Petitioner and Respondent previously agreed that the claim was unexhausted.  (R. at 69).  Petitioner requested this Court to stay the federal proceedings while he exhausted the claim in state court.  (R. at 69).  The Court found that it could not hold the federal proceedings in abeyance

because Petitioner could not show good cause for his failure to litigate the claim during one of his three previous state habeas corpus actions.[1] (R. at 72). Thereafter, during the pendency of this federal habeas corpus action, Petitioner attempted to exhaust this claim by filing a fourth state habeas corpus petition (Civil Action No. 05-V-435) in the Butts County Superior Court on May 23, 2005. (See R. at 69, p. 6; Resp't Ex. 53).

In an Order dated June 13, 2005, the Butts County Superior Court explained that Petitioner's claim of prosecutorial misconduct in the preparation and presentation Ms. Doster's testimony was readily available to Petitioner during his previous state habeas corpus action. (Resp't Ex. 55, p. 4-5). Therefore, the state court found the claim was procedurally defaulted and dismissed Petitioner's fourth state habeas corpus action as successive. (Resp't Ex. 55). Petitioner filed a notice of appeal and an Application for a Certificate of Probable Cause asking the Supreme Court of Georgia to review the Butts County Superior Court's Order. (Resp't Ex. 61, 62). The Georgia Supreme Court subsequently denied Petitioner's Application for Certificate of Probable Cause. (Resp't Ex. 64).

In light of this history, it seems clear that Petitioner's claim regarding Ms. Dosters' perjury is procedurally defaulted, just as the Butts County Superior Court held in its June 13, 2005 Order. (Resp't Ex. 55). This Court must give deference to the state court's finding of procedural default and find, just as the state court did, that Claim Two has been procedurally defaulted. *See Putman v. Turpin*, 53 F. Supp. 2d 1285, 1292 (M.D. Ga. 1999), *aff'd*, 268 F.3d 223 (11th Cir. 2001) (explaining that "when it is clear that the unexhausted claims would be barred in state court due to a state law procedural default, federal courts 'can . . . treat those claims now barred by state law as no basis for federal habeas relief'") (quoting *Snowden*, 135 F.2d at 735); *Baily v. Nagle,* 172 F.3d

---

[1] A detailed factual and procedural history of this case is contained in this Court's July 29, 2005 Order denying Petitioner's Motion to Hold Proceedings in Abeyance Pending Exhaustion. As is shown in that Order, prior to filing his federal habeas petition, Petitioner filed a total of three state habeas actions: (1) Civil Action No. 99-V-155 filed in the Butts County Superior Court on March 3, 1999; (2) Civil Action No. 99-V-205 filed in the Butts County Superior Court on March 19, 1999; and (3) Civil Action No. 99-V-847 filed in the Butts County Superior Court on December 28, 1999. (Resp't Ex. 37, p. 39, 116-134).

1299, 1302 (11th Cir. 1999)(explaining that when "the state correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, **Sykes** requires the federal court to respect the state court's decision")(citing **Wainwright v. Sykes**, 433 U.S. 72 (1977)).

However, contrary to what Petitioner maintained previously, he now alleges that Claim Two was exhausted at the state level during his third state habeas action (Civil Action No. 99-V-847). Petitioner states the claim was exhausted when Ms. Doster's "affidavit was introduced into the state habeas record by attorney Thomas Dunn of the Georgia Resource Center at a hearing on September 19, 2000 in the Butts County Superior Court." (Pet'r 1/12/06 Br., p. 8). The record does show that on September 19, 2000 the Butts County Superior Court held a hearing to discuss issues relating to Petitioner's third state habeas corpus action. (Resp't Ex. 52). At this hearing, Mr. Dunn submitted an "Amendment to Petition for Writ of Habeas Corpus." (Resp't Ex. 52, p. 56). Claim II of this amendment contained the allegations that are currently contained in Claim Two of Petitioner's federal habeas petition; i.e., "[t]he State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court/fact-finder at trial." (Resp't Ex. 52, p. 68). Mr. Dunn also submitted, among other documents, Ms. Doster's June 15, 2000 affidavit. (Resp't Ex. 52).

Petitioner, however, refused to allow Mr. Dunn to represent him or to amend his original *pro se* habeas petition to include Claim II. He told the Court that he wanted to rely solely on his original petition. (Resp't Ex. 52, p. 19-21, 24-25, 53-54). Petitioner did allow the Court to file Ms. Doster's affidavit, so that it would "be on record where [he could] rely on the record back in the trial court." (Resp't Ex. 52, p. 55). However, Petitioner steadfastly refused to allow the claim of prosecutorial misconduct surrounding Ms. Doster's testimony to be added to his habeas petition. Although Ms. Doster's affidavit sat on record, Petitioner, at no time, either in writing or orally, asserted this claim in the Butts County Superior Court during the pendency of Civil Action No. 99-V-847. This is true

5

even though Mr. Dunn, time and time again, advised Petitioner to assert his claim of prosecutorial misconduct in his third habeas corpus action.  (Resp't Ex. 52, p. 8, 35-36; Resp't Ex. 27, p. 316).

The fact that the affidavit alone, which contains facts to support a claim that was never made, was placed in the record does not mean that the claim was "fairly presented" to the state habeas court.  The United States Supreme Court addressed the issue of when a claim is "fairly presented" to a state court in *Baldwin v. Reese*, 541 U.S. 27 (2004).  In *Baldwin*, the question was whether Reese had "fairly presented" the claim that his appellate counsel's ineffective assistance violated federal law.  *Id.* at 29-30.  His petition did assert that he had received "'ineffective assistance of both trial court and appellate court counsel'." *Id*. at 30.  Moreover, he alleged that "*trial* counsel's conduct violated several provisions of the *Federal* Constitution." *Id*.  However, Reese did not specifically allege that "his separate appellate 'ineffective assistance' claim violated *federal* law." *Id.*  The Court stated that because Reese's habeas petition did not alert the state court to the federal nature of his appellate ineffective assistance claim, he had not "fairly presented" this claim to the state court.  *Id*. at 30-31.  The Court held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Id*. at 32.

In this case, Petitioner did not allege his claim of prosecutorial misconduct in his state habeas petition, in any briefs, or in any similar documents.  In fact, he did not specifically allege the claim anywhere.  To the contrary, he specifically requested that the proposed amended state habeas petition, which did include the claim, not be filed.  (Resp't Ex. 52, p. 19-21, 24-25, 53-54).  Although Ms. Doster's affidavit contains facts to support this claim, the claim itself was never set forth in any documents filed in Civil Action No. 99-V-847.  Therefore, the Court finds that Petitioner never "fairly presented" Claim Two of his federal habeas petition to the state habeas court.  *See Jones v. Campbell*, No. 04-11911, 2006 U.S. App. LEXIS 1381, at *48-49 (11th Cir. Jan. 20,

2006)(holding that general references to a claim, without setting out the actual claim in a habeas corpus petition, does not "fairly present" the claim to the state courts).

It is clear from a thorough review of the record that this claim was not exhausted when Petitioner had the chance–during the pendency of his third habeas corpus action.  Moreover, when he recently filed his fourth habeas corpus action, the state court found Petitioner had procedurally defaulted the claim.  (Resp't Ex. 55, 60, 64).  Based on these findings, this Court must treat the claim as procedurally defaulted and as providing no basis for federal relief unless one of the two exceptions to procedural default (cause and prejudice or fundamental miscarriage of justice) apply.

Petitioner maintains that both of these exceptions apply.  First, he states that he can show cause for his failure to litigate this issue in the state courts–ineffective assistance of counsel.  Specifically, Petitioner states that John Matteson improperly advised him to withdraw his Extraordinary Motion for New Trial (which contained this claim) prior to the scheduled hearing date.[2]  Petitioner states that the decision to withdraw the pending motion was erroneous and fell below the standard of professionalism expected of an attorney.  According to Petitioner it was this decision alone, made by his attorney, that resulted in the state court's inability to consider the claim and prejudiced his defense.

If the Court considered only the proceedings involving Petitioner's Extraordinary Motion for a New Trial and the correspondence from Mr. Matteson regarding that motion, the Court would be inclined to agree that Petitioner has shown cause for his failure to have the state court adjudicate

---

[2]Petitioner filed an Extraordinary Motion for New Trial in July 2000.  (Resp't Ex. 37, p. 271-72).  Petitioner attached to this motion the June 15, 2000 affidavit of Mary Samantha Doster, as well as other affidavits, and asserted that this newly discovered evidence warranted a new trial.  (Resp't Ex. 37, p. 271-272).  The Oconee County Superior Court ordered that Petitioner be granted a hearing limited solely to the issue of prosecutorial misconduct with respect to the alleged knowing use of perjured testimony by the District Attorney as claimed in the June 15, 2000 affidavit of Mary Samantha Doster.  (Resp't Ex. 37, p. 410-17).  However, before the hearing took place, Petitioner, through his then attorney of record, John Matteson, withdrew the extraordinary motion for new trial on July 5, 2001.  (Resp't Ex. 38-41.)  The Court entered an order dated July 9, 2001 cancelling the July 10, 2001 hearing due to Petitioner's withdrawal of his Extraordinary Motion for New Trial.  (Resp't Ex. 41.)

Claim Two.  However, a review of Petitioner's entire record reveals that Petitioner had plenty of opportunity to litigate this same issue in his third state habeas corpus action.  However, Petitioner, of his own accord, failed to do so.

Specifically, as discussed above, when the state habeas court held the September 19, 2000 hearing, Thomas Dunn submitted a proposed amended state habeas petition that contained the claim of prosecutorial misconduct surrounding Ms. Doster's testimony.  (Resp't Ex. 52, p. 68.)  Mr. Dunn also submitted the following documents to the habeas court: (1) Mary Samantha Doster's June 15, 2000 Affidavit; (2) a Notice of Intent to Rely Upon Affidavits; and (3) Petitioner's Witness List that contained the name and address of Mary Samantha Doster, as well as numerous other witnesses. (Resp't Ex. 52.)  Mr. Dunn explained that if he represented Petitioner these are the documents that he would present.  (Resp't Ex. 52, p. 8, 35-36.)

At this hearing, however, Petitioner stated that he did not want any further assistance from Mr. Dunn or the Georgia Resource Center, and he insisted the court rely solely on his *pro se* filings.[3] (Resp't Ex. 52, p. 19-21, 24-25.)  In response to this request, the court relieved the Georgia Resource Center from any further representation or assistance of Petitioner.  (Resp't Ex. 52, p. 53.) Additionally, the court told Petitioner it would allow him to amend his petition to include any claims he so desired.  (Resp't Ex. 52, p. 54.)

Following this hearings, in a letter dated October 31, 2000, Mr. Dunn reminded Petitioner that he had "submitted a Notice of Intent to Rely on Affidavits and an exhaustive list of potential witnesses" for the upcoming evidentiary hearing.  (Resp't Ex. 27, p. 316.)  Mr. Dunn advised Petitioner that, at the upcoming evidentiary hearing, Petitioner should use the affidavits that Mr. Dunn had provided him and the court at the previous September 19, 2000 hearing.  (Resp't Ex. 37, p. 316.)

---

[3]Petitioner, as explained above, did agree to have the affidavits filed; but he steadfastly refused to have the claim regarding Ms. Doster's testimony added to the habeas corpus action.  (Resp't Ex. 52, p. 54-55.)

The Superior Court of Butts County held an evidentiary hearing on February 1, 2001.  The Court explained that Petitioner could testify and could call any witnesses he wanted.  (Resp't Ex. 37, p. 6.)  Petitioner, who insisted on acting *pro se* even though Thomas Dunn was present at the hearing and continuously asserted his desire to help, called no witnesses (other than himself).

The Butts County Superior Court informed Petitioner that it would reserve ruling on the habeas corpus petition until the Oconee County Superior Court ruled on the outstanding Extraordinary Motion for a New Trial.  Subsequently, the Butts County Superior Court issued its decision denying Petitioners habeas petition on January 14, 2002.  (Resp't Ex. 42.)  This was approximately six (6) months after Mr. Matteson dismissed the Extraordinary Motion for a New Trial.  At no time during this six (6) months did Petitioner seek to include his claim of prosecutorial misconduct in his habeas corpus petition pending in Butts County.[4]  This is true, even though Mr. Dunn attempted to include this claim in the amended habeas petition he sought to file (and Petitioner refused to file) on September 19, 2000, and advised Petitioner repeatedly to assert the claim, rely on Ms. Doster's affidavit, and call Ms. Doster as a witness.

In short, Petitioner's record shows that during his many proceedings in state court, Petitioner was represented by numerous experienced death penalty attorneys.[5]  Yet, Petitioner refused to take their advise, discharged all of them, and failed to assert the claims that he should have.  Given this,

[4]It appears that by letter dated May 20, 2001 (which was prior to Mr. Matteson's July 5, 2001 dismissal of the extraordinary motion for a new trial), Petitioner requested the Butts County Superior Court reopen the evidence in his state habeas case and allow John Matteson to represent him.  (Ex. BB attached to Pet'r Motion to Hold Proceedings in Abeyance Pending Exhaustion).  It appears that Petitioner was not specific in his request to reopen the evidence, but instead simply asked the court to give Mr. Matteson "wide latitude to repair whatever legal issues that may have been messed up."  (Ex. BB attached to Pet'r Motion to hold Proceeding in Abeyance Pending Exhaustion).  Respondent objected because Petitioner already had and dismissed numerous attorneys during this third habeas proceedings and because Petitioner had unequivocally discharged Mr. Matteson and removed from the record all pleadings filed by Mr. Matteson in Petitioner's very first habeas petition (Civil Action No. 99-V-155).  It does not appear that the Butts County Superior Court ever addressed Petitioner's May 20, 2001 letter.  Moreover, it does not appear that Petitioner ever brought the issue of prosecutorial misconduct up in the Butts County Superior Court after he and Mr. Matteson voluntarily dismissed his extraordinary motion for a new trial.

[5]During his three state habeas corpus actions, Petitioner was represented by several different attorneys: John Matteson, Bruce Harvey, and Thomas Dunn.  However, Petitioner ultimately fired all of them and insisted on acting *pro-se*.  (Resp't Ex. 37).

the Court finds that Petitioner has not shown cause (defined as some external impediment preventing a habeas petitioner from raising a claim) for his failure to assert his claim regarding the perjured testimony of Ms. Doster.  *Putman*, 53 F. Supp. 2d at 1292.  As the Court finds Petitioner has not established cause for his failure to litigate this issue in state court, the Court need not address prejudice.  *Id.*

Additionally, Petitioner states that the Court's failure to review this claim on the merits will result in a fundamental miscarriage of justice.  The Eleventh Circuit has explained that "[t]o excuse a default of a guilt-phase claim under [the fundamental miscarriage of justice] standard, a petitioner must prove 'a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent'."  *Hill v. Jones*, 81 F.3d 1015, 1023 (11th Cir. 1996)(quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Petitioner has steadfastly maintained his actual innocence of the underlying crime of murder in this case.  Petitioner alleges that "Samantha Doster's recantation of critical testimony should have resulted in the reversal of [Petitioner's] conviction.  Failure to do so resulted in a miscarriage of justice because [Petitioner] is actually innocent of the crime for which he was convicted."  (Pet'r 01/12/06 Br., p. 27-28).

The United States Supreme Court has explained that when a Petitioner maintains that a miscarriage of justice due to "actual innocence" will result from a district court's failure to review a procedurally defaulted claim, the court "must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default."  *Dretke v. Haley*, 541 U.S. 386, 394 (2004).  "This sequencing requirement was designed by the Supreme Court as a means of avoiding the 'threshold legal questions that often accompany claims of actual innocence' when a default can be excused on some simpler ground or full relief can be granted on a nondefaulted ground."  Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.4 (5th ed. 2005)(quoting *Dretke*, 541 U.S. at 394).

As Petitioner's miscarriage of justice argument, which he presents to excuse the procedural default of Claim Two, is founded on a claim of actual innocence, the Court will, in accordance with ***Dretke***, address this claim after it has reviewed both Petitioner and Respondent's briefs on the nondefaulted claims and made its determination regarding these claims.  Both parties should submit these briefs in accordance with the Amended Scheduling Order dated July 29, 2005. (R. at 73).

**B.  Claim Four: Petitioner was denied effective assistance of trial counsel, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, when trial counsel failed to conduct an adequate pretrial investigation and presentation at trial concerning an alleged shotgun fragment, which the state claimed was discovered at the scene of the crime.**

Petitioner alleges that this claim is exhausted because he raised it "on direct appeal when [P]etitioner argued to the Georgia Supreme Court that the [S]tate violated due process by failing to disclose the identity of the operator of a metal detector who failed to discover the fragment at the crime scene the first time it was swept."  (Pet'r 01/12/06 Br., p. 10).  Moreover, Petitioner states that he raised the issue "in his state habeas petition and attached an affidavit in support of the claim." (Pet'r 01/12/06 Br., p. 10).  Respondent alleges that the only claim Petitioner ever made at the state level regarding the shotgun fragment was a claim under ***Brady v. Maryland***, 373 U.S. 83 (1963). Therefore, according to Respondent, Claim Four is unexhausted because Petitioner is raising the claim under the legal theory of ineffective assistance of counsel for the first time during this federal habeas corpus action.

The Court would agree with Respondent if the record actually revealed that this was the first time this claim had been raised under the legal theory of ineffective assistance of counsel.  However, a review of Petitioner's appellate record shows that Petitioner alleged his trial counsel failed to "[a]dequately [p]repare to [d]eal with [p]hysical, [f]orensic and [b]ackground [e]vidence."  (Resp't Ex. 25, p. 87-89).  Specifically, on direct appeal Petitioner stated that his trial counsel was ineffective for the following reasons:

> The defense did not take independent or adequate steps through pretrial investigation to learn who actually operated the [metal detector] and to learn his or her version of the October 20th events.  In addition, in the course of the trial when prosecution crime scene witnesses testified to the use of the detector on the 20th, the defense did not pursue cross-examination concerning the identity of the operator. . . . Nor did the defense seek a continuance at the point in the trial when crime scene officers testified that it was someone other than themselves who actually used the metal detector.  These omissions deprived the defense of critical exculpatory evidence that would have undermined one mainstay of the government's case.

(Resp't Ex. 25, p. 88-89).

The Georgia Supreme Court held that Petitioner's "trial counsel was not ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984)."  *Mize v. State*, 269 Ga. 646, 654-55 (1988).

The Court has also reviewed Petitioner's numerous state habeas petitions and determined that the only claim Petitioner made at the state habeas level regarding the shotgun fragment was a claim under *Brady v. Maryland*, 373 U.S. 83 (1963).  However, the fact that Petitioner did not make an ineffective assistance of counsel claim regarding the shotgun fragment during his state habeas corpus proceedings is immaterial because he did, as explained above, present the claim to the Georgia Supreme Court.  Once a claim has been presented to the state's highest court, exhaustion does not require future presentations at the state level.  *See Romine v. Head*, 253 F.3d 1349, 1363-64 (11th Cir. 2001) (explaining that if the Georgia Supreme Court decides as issue, there is no procedural bar preventing review by a federal court); Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.3b (5th ed. 2005).  The Court finds that Petitioner exhausted this claim and it will be reviewed on the merits at the appropriate time.

**C.  Claim Five: Petitioner was denied effective assistance of trial counsel, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, when trial counsel failed to conduct an adequate pretrial investigation and presentation at trial to undermine the states theory that [Petitioner] and his co-defendants attempted to commit arson.**

Petitioner maintains that this claim "was raised in state habeas and evidence was introduced by means of an affidavit of John Bulla."  (Pet'r 01/12/06 Br., p. 13).  As stated above, at the

September 19, 2000 hearing, Thomas Dunn proffered an amended habeas corpus petition. That amendment included the following claim:

> Counsel failed to adequately investigate and present evidence exposing flaws in law enforcement's investigation into circumstances of the murder of Eddie Tucker, including available forensic expert testimony which would have effectively challenged the state's theory of the case, including the arson attempt alleged to have occurred on the night of the crime.

(Resp't Ex. 52, p. 60-61).

Mr. Dunn also introduced the affidavit of John Bulla to support this claim. (Resp't Ex. 52, p. 9-10).

Although Petitioner allowed the state court to file all of the affidavits offered by Mr. Dunn, Petitioner steadfastly refused to allow his habeas petition to be amended. (Resp't Ex. 52, p. 19, 21-26). Petitioner clearly asserted that he wanted the court to address only those claims contained in his original habeas corpus petition. (Resp't Ex. 52, p. 54). Claim Five of his federal habeas petition was not contained in his original state habeas corpus petition. (Resp't Ex. 34). As explained above in this Court's discussion of Claim Two, a claim is not "fairly presented" when the claim is not alleged in any of Petitioner's petitions or briefs, and only an affidavit, which contains facts to support the unmade claim, is placed in the record. *See generally Baldwin v. Reese*, 541 U.S. 27 (2004); *Jones v. Campbell*, No. 04-11911, 2006 U.S. App. LEXIS 1381, at *48-49 (11th Cir. Jan. 20, 2006). As Petitioner failed to present this claim to the state courts, this Court must treat the claim as procedurally defaulted. *See Baldwin v. Reese*, 541 U.S. 27 (2004), *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998); *Putman v. Turpin*, 53 F. Supp. 2d 1285, 1292 (M.D. Ga. 1999), *aff'd*, 268 F.3d 223 (11th Cir. 2001)

In his brief, Petitioner merely argues that this claim has been exhausted and is, therefore, not procedurally defaulted. Petitioner offers no arguments regarding an excuse for procedural default of this claim. The court, after reviewing the record and briefs, find no external impediment preventing Petitioner from raising Claim Five during one of his many proceedings in the state courts. Therefore, Petitioner has not shown cause for this procedural default. Moreover, in his brief,

Petitioner has not argued that the Court's failure to review this procedurally defaulted claim on the merits will result in a fundamental miscarriage of justice.

**D. Claim Six: Petitioner was denied effective assistance of trial counsel, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, when trial counsel failed to conduct an adequate pretrial investigation and presentation at trial of the criminal histories of the state's witnesses in an effort to impeach them.**

Petitioner states that this claim has not been exhausted and he has decided to abandon the claim. Therefore, the Court will not discuss this claim further in this Order or in any future Orders.

**IV. CONCLUSION**

The following two claims will not be addressed further by the Court: Claim Five and Claim Six. Petitioner procedurally defaulted Claim Five and has stated an intention to abandon Claim Six.

Petitioner has procedurally defaulted Claim Two of his federal habeas petition. However, Petitioner has set forth a miscarriage of justice argument founded upon a claim of actual innocence to overcome this procedural default. In accordance with ***Dretke***, before resolving this claim, the Court must "first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." ***Id.*** at 394. Therefore, the Court will address this issue after the parties have briefed all of the nondefaulted claims in accordance with the Amended Scheduling Order dated July 29, 2005, and after the Court has addressed these nondefaulted claims seeking comparable relief.

The Court finds that Petitioner has not procedurally defaulted Claim Four and the Court will address this claim after the parties have had the opportunity to brief the claim in accordance with the Amended Scheduling Order dated July 29, 2005. (R. at 73).

**SO ORDERED**, this 15th day of March, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

14